133 So.2d 432 (1961)
Annie Davis SKELTON, Appellant,
v.
Robert DAVIS, Sr., Executor, Appellee.
No. 60-695.
District Court of Appeal of Florida. Third District.
October 5, 1961.
*433 George G. Graham, Miami, for appellant.
Louis Winter, Miami, for appellee.
Before PEARSON, TILLMAN, C.J., and CARROLL and HENDRY, JJ.
HENDRY, Judge.
The appellant is one of the five living children of Annie B. Davis, deceased. She is appealing from an order of the county judge's court denying her petition for revocation of probate of her mother's will. The probated will directs that substantially all of the rather large estate be divided among three of the children to the exclusion of the appellant and another daughter, both of whom were previously instrumental in having their mother declared incompetent to handle her affairs, by the circuit court, and made a ward of the court in proceedings under the applicable provision of Chapter 747, Fla. Stat., F.S.A. The petition for appointment of the curator under this statute was filed, by these two daughters, in the circuit court in and for Dade County, Florida, on December 17, 1956, and on January 10, 1957 the circuit court entered its decree appointing a curator and making Annie B. Davis, the mother, ward of the court, upon a finding by the court that "the said Annie B. Davis has become, by reason of her age, unable to take care of her property, or manage and conduct her financial and business affairs, and in consequence thereof, is liable to dissipate or lose the same, or to become the victim of designing persons, and is thereby in need of the protection of this Court and should become a Ward of the Court, and that the appointment of a Curator to handle and conduct her affairs is proper, appropriate and reasonably necessary for the best interests of the said Annie B. Davis". The decree stated further:
"* * * It is not the intention of this Court, by this order, to unduly restrict or inhibit the personal activities of said Annie B. Davis, who shall be in all ways free to act as she desires, except in the direct management of her business affairs."
"* * * In all respects, the Statutory procedure set forth in Chapter 747., pertaining to the appointment of curators, and the proceedings thereon, as specified in Chapters 747.05 to 747.18 inclusive, Florida Statutes, shall apply and be followed in this cause."
The three children who had not joined in the petition for a curator appealed from the decree of the circuit court. The Supreme Court in affirming the decree appointing the curator, Davis v. Carter, Fla. 1958, 107 So.2d 129, noted that prior to the curatorship proceedings, Annie B. Davis was able to rely on a son who until his death had advised and assisted her in the management of her financial affairs. In addition, the court took cognizance of the animosity existing among her children, who had aligned themselves into two groups, each suspicious of the other.
In August 1956, about five months before the curatorship proceedings commenced, Annie B. Davis had executed a will which provided that the estate be divided into six *434 equal shares, with one share going to each of the five living children and the sixth share going to the heirs of a deceased child of the testatrix. On January 21, 1957, eleven days after the circuit court had entered its decree making Annie B. Davis a ward of the court and appointing a curator to handle her financial and business affairs, she executed a will that revoked the previous will. In the new will the two daughters who had filed the petition for a curator, were bequeathed only one hundred dollars each. The other three children of the testatrix were left substantially all the remainder of the estate to share equally. The testatrix stated in the will:
"The reason that I am not bequeathing and devising to my daughters, Gertrude and Annie, any more of my property than above specified is due to the fact that they have harassed me recently with litigation in Alabama and in Miami, Florida, even going to the extent, in Miami, Florida, of applying for the appointment of a curator to take charge of my property on the ground that I am incompetent. Of course I resent this action on their part as I am not incompetent, and I thoroughly understand my business affairs and know what I am doing, and this will has been made after prayerful deliberation."
The two daughters, Gertrude and Annie, and the curator learned of this will after the death of the testatrix on February 7, 1960. The will was admitted to probate on February 15, 1960. On March 18, 1960, appellant, Annie Davis (Dolly) Shelton, filed her petition in the county judge's court for revocation of probate of the will, alleging testamentary incapacity of the testatrix at the time of the execution of the will and her lack of power to execute a will while a ward of the court, without first complying with the requirements of the appropriate provisions of Chapter 747 of the Florida Statutes, F.S.A. Her petition was denied and it is from that order of the county judge that this appeal is taken.
Turning now to appellant's first ground for appeal, to-wit: the court erred in finding that the testatrix had testamentary capacity.
The record shows that two court appointed physicians examined the testatrix, in connection with the curatorship proceedings, and were of the opinion that the testatrix was in better mental health than the average eighty year old person, although she did have difficulty managing her business affairs. One of the physicians was also her treating physician from 1955 to April, 1957. In the proceedings before the county judge he testified he had seen the testatrix, as a patient, at his office on January 28, February 1, February 14, February 22, March 8 and April 12 in the year 1957. He was of the opinion that from the standpoint of her mental health there had been no change from the time he testified in the curatorship proceedings to the date of her last visit to his office.
In addition, three of the seven subscribing witnesses testified that the testatrix did possess all her faculties at the time the will was executed and that she appeared to be alert. They were also of the opinion that the testatrix had the ability to understand the nature of the instrument she was executing, and that she possessed an awareness of the identity of her children, grandchildren and great-grandchildren.
It should be noted that the county judge did give effect to the evidence introduced by the appellant relating to the curatorship proceedings. Although generally, the petitioner in a proceeding to revoke probate of a will, must establish the lack of testamentary capacity, the county judge ruled that the adjudication of incompetency, by the circuit court in appointing the curator, resulted in a prima facie case for the appellant. It was thus incumbent upon the appellees to come forth with evidence as to the capacity of the testatrix at the time of the execution of the will, since the burden had shifted to appellee as the proponent of the will. As to this ruling, appellant *435 does not complain. However, appellant contends that appellee did not sustain its burden in overcoming the prima facie case of appellant, and that the finding of testamentary capacity was not supported by the evidence.
The right or privilege of disposing of property by will is highly valuable, and it is the policy of the law to hold wills good wherever possible. As long as a testator does not will against the law or public policy he may will as he chooses, and has the right to select the objects of his bounty. In re Starr's Estate, 125 Fla. 536, 170 So. 620.
Even a wholly and unreasonable and ill founded prejudice against a child or other relative is not of itself a ground for invalidating a testator's will, for people may hate their relatives for bad reasons without being deprived of testamentary power. 57 Am.Jur., Wills, § 76.
The principle of law that testamentary capacity is to be judged solely at the time of the execution of the will is irrefragable and no authority need be cited. The making of a will does not depend on a sound body but a sound mind. The term "sound mind" means the ability of the testator "to mentally understand in a general way the nature and extent of the property to be disposed of, and the testator's relation to those who would naturally claim a substantial benefit from the will, as well as a general understanding of the practical effect of the will as executed." Newman v. Smith, 77 Fla. 633, 82 So. 236, 241; Neal v. Harrington, 159 Fla. 381, 31 So.2d 391; In re Wilmott's Estate, Fla. 1953, 66 So.2d 465, 40 A.L.R.2d 1399; In re Bailey's Estate, Fla.App. 1960, 122 So.2d 243.
The issue of the capacity of a testator is one for the trier of fact. It is a well-settled rule of judicial administration that an order of a county judge sitting in probate not be disturbed on appeal where there is susbstantial competent evidence to sustain the finding unless the county judge has misapprehended the evidence as a whole. In re Bailey's Estate, supra; In re Wilmott's Estate, supra. An evaluation of the evidence taken as a whole leads to the determination that there was sufficient evidence to support the finding of the county judge that the testatrix had testamentary capacity at the time the will admitted to probate was executed.
Appellant's second ground for appeal is that the circuit court decree of January 10, 1957 appointing the curator and making the testatrix a ward of the court, rendered the will executed after the date of the decree void by reason of § 747.11, Fla. Stat., F.S.A. That section reads as follows:
"From and after the rendition of the decree appointing a curator, such person for whom appointed shall be a ward of the court appointing such curator, and the ward shall be wholly incapable of making any contract or gift whatever, or any instrument in writing, of legal force and effect, except after leave of court is granted upon a hearing after notice to the curator and such next of kin as the court shall order given notice of application."
Both parties agree that no notice of any kind was given by the ward to either the court or the curator. As a result, appellant contends that the testatrix was incapable of executing the will in question since it is an "instrument in writing" within the meaning of the statute.
The appellee's contention is that section 747.11 does not pertain to wills and that any other interpretation would result in a conflict between that section and § 731.04, Fla. Stat., F.S.A., which reads as follows:
"Any person, male or female, married or single, who is eighteen years * * * of age and who is of sound mind may make a will. No other person may make a will."
*436 Since no case authority has been found which has interpreted section 747.11, the question is an open one.
A search of judicial interpretations of similar statutes of other states indicates that the appellee's position has been favored. Section 40 of the Civil Code of California reads in part as follows:
"After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor delegate any power or waive any right, until his restoration to capacity."
The courts of California have interpreted this statute to exclude wills since it would be in conflict with the "spirit and effect of section 20 of the Probate Code" (California), which is for all practical purposes identical with § 731.04, Fla. Stat., F.S.A., supra. In re Worrall's Estate, 53 Cal. App.2d 243, 127 P.2d 593, 595. To the same effect are the decisions of Virginia, Oklahoma and Rhode Island in construing statutory language of like import to that in the instant case. Gilmer v. Brown, 186 Va. 630, 44 S.E.2d 16; Jenckes v. Court of Probate, 2 R.I. 255; In re Nitey's Estate, 175 Okla. 389, 53 P.2d 215. While the above statutes are not identical with section 747.11, a judicial desire not to interfere with the "sound mind" test for testamentary capacity can readily be extracted from the above decisions.
It is also especially important to note that the law of this state recognizes that a lunatic may draw a valid will. Murrey v. Barnett Nat. Bank of Jacksonville, Fla. 1954, 74 So.2d 647. By the same token, the proven fact of a prior condition of insanity does not, in and of itself, negate the finding of testamentary capacity. Kuehmsted v. Turnwall, 1934, 115 Fla. 692, 155 So. 847. With this in mind, it is not difficult to see what prompted the court in Chapman v. Campbell, Fla.App. 1960, 119 So.2d 61, 63, to interpret the statute in question in that case as it did. While that case did not involve section 747.11, it would appear that much of the reasoning employed there is equally applicable in the instant case. The Chapman case involved a claim by the appellant that since the testator had a guardian appointed over his person and property after an adjudication of incompetency, the testator was without power to make a will after the date of the adjudication. The contention was based on § 744.34(1), Fla. Stat., F.S.A., dealing with the law of guardian and ward while the lower court relied on § 394.22 (10), Fla. Stat., F.S.A., dealing with the law of incompetency. The court said:
"Neither chapter is applicable to the administration of estates and they do not control the several provisions of the probate law as set out in Chapter 731 and following. The general rule, in the absence of any evidence to the contrary, is that a testator is presumed to be sane and to have sufficient mental capacity to make a will. * * * An adjudication of insanity or incompetency, however, raises a question of testamentary incapacity and the burden of proof then shifts to the proponent of the will * * *"
The rule that provisions outside the chapters dealing with the administration of estates do not control such chapters, is applicable in the case at hand.
The task of statutory construction is not an easy one. Care must be taken to avoid applying a literal interpretation with the result that seemingly unaffected provisions of unrelated chapters will be changed. While the language of section 747.11 is broad, it is important to note that no reference is made to section 731.04, which was already enacted into law. The particularities of the "sound mind" requirement as propounded by section 731.04 and as judicially interpreted, are well established in this state. Any legislative change in this respect would be substantial and undoubtedly would be accomplished by express statutory language, and not by means *437 of implication. Chapter 747, Fla. Stat., F.S.A., is entitled, "Absentees, Incompetents, etc., and the Conservation of Their Property" and is directed at the preservation and disposition of property during the lifetime of the ward. Chapter 731, Fla. Stat., F.S.A., is entitled, "Florida Probate Law, First Part", and specifically deals with the preservation and disposition of property after the death of the person. To interpret section 747.11 as appellant suggests would necessarily result in a change of the provisions of section 731.04, since the requirements for an appointment of a curator under section 747.11 are different and one could then have a sound mind and still not be able to make a will.
The Supreme Court in Davis v. Carter, supra [107 So.2d 129], in affirming the decree appointing the curator herein said:
"Under the statute pursuant to which this appointment was made, it was not necessary that a person be actually insane or mentally ill before a curator could be appointed to manage his or her estate. A curator could be appointed when a person had `become physically incapacitated * * or so mentally or physically defective by reason of age * * * that he or she is unable to take care of his or her property, and in consequence thereof if (sic) liable to dissipate or lose the same, or to become the victim[s] of designing persons.'" § 747.05, Fla. Stat. 1955. And see Donnelly v. Mann, Fla. 1943, 68 So.2d 584; § 744.03(5), Fla. Stat. 1957. (Emphasis added.)
Clearly physical incapacity is not an element of whether one is possessed of a sound mind and consequently, the test for appointment of a curator under section 747.05[1] is not to be regarded as the equivalent of a finding by the court that the person does not possess a sound mind. To hold otherwise, would result in the application of loose judicial construction by means of implication which both the language of the statute and the reason for its enactment do not call for. It follows, therefore, that the order of the county judge denying the petition for revocation of probate should be affirmed.
It is so ordered.
NOTES
[1] Section 747.05 has since been repealed.